DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. The jury found Paul W. Teets, defendant below and appellant herein, guilty of aggravated murder in violation of R.C. 2903.01(A).
 {¶ 2} Appellant raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "MR. TEETS WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FEDERAL AND STATE CONSTITUTIONS."
SECOND ASSIGNMENT OF ERROR:
 {¶ 4} "IN VIOLATION OF DUE PROCESS, MR. TEETS WAS FOUND GUILTY OF AGGRAVATED MURDER ON INSUFFICIENT EVIDENCE AND HIS VERDICT WAS ENTERED AGAINST THE MANIFEST WEIGHT [O]F THE EVIDENCE."
 {¶ 5} On the evening of January 10, 2001, appellant and three of his friends, Johnny Forbes, "JR," and Bobby Bailey, were out carousing. The four drove around most of the evening and stopped at various other friends' homes. They continued their activities through the early morning hours of January 11, 2001.
 {¶ 6} Sometime around 4:00 a.m. on January 11, Forbes drove the four to a home on Canal Road under the pretense that they were going to break into a car and steal stereo equipment. When they arrived, appellant, who was sitting in the front passenger's seat, reached under the seat and handed Forbes a black hat that contained a gun. Appellant, Forbes, and JR exited the car. Appellant walked to the car and smashed a car window. At approximately the same time, Forbes shot JR four times in the head.
 {¶ 7} At approximately 8:30 a.m. on January 11, 2001, Eric Hoops discovered the body of Larry Dean Storts (aka "JR"). Hoops's wife, Steva, contacted the Pickaway County Sheriff's Office.
 {¶ 8} Shortly after initiating their investigation, the officers learned that appellant and Forbes were among the last people who saw Storts alive. On January 12, 2001, the officers took appellant into custody for questioning.
 {¶ 9} The officers conducted two taped interviews of appellant. Appellant gave the officers two varying stories. During the first interview, appellant told the officers that he saw Forbes shoot Storts, but did not indicate that he had any prior knowledge that Forbes planned to shoot Storts.
 {¶ 10} During the second interview, appellant admitted that he knew in advance that Forbes intended to kill Storts. Appellant explained that Storts had told appellant that Storts liked Forbes's girlfriend, and that when Forbes found out what Storts had stated, Forbes decided to kill Storts. Appellant admitted that prior to their contact with Storts on the evening of January 10, he knew that Forbes intended to kill Storts that evening. Appellant stated that when Forbes told him that he wanted to kill Storts, appellant "just said okay." Appellant also indicated that he and Forbes lured Storts out on the evening of January 10 so that Forbes could carry out his plan to kill Storts. With respect to the circumstances surrounding the shooting, appellant admitted that he handed Forbes the gun.
 {¶ 11} On January 19, 2001, the Pickaway County Grand Jury returned an indictment charging appellant with aggravated murder in violation of R.C. 2903.01(A). The indictment also contained a firearm specification.
 {¶ 12} On September 24, 2001, the trial court held a jury trial. At trial, the prosecution played the tape recordings of appellant's interviews with the law enforcement officers, in which he admitted: (1) having prior knowledge that Forbes intended to kill Storts; (2) luring Storts out while knowing that Forbes intended to kill him; and (3) handing Forbes the gun used to kill Storts.
 {¶ 13} At the close of the evidence, the trial court instructed the jury that it could find appellant guilty of either aggravated murder, which requires prior calculation and design, or murder.
 {¶ 14} On September 26, 2001, the jury found appellant guilty of aggravated murder. The jury, however, declined to find that appellant committed the offense with a firearm. On December 14, 2001, the trial court sentenced appellant to life in prison.
 {¶ 15} Appellant filed a timely notice of appeal.
 I {¶ 16} In his first assignment of error, appellant asserts that he received ineffective assistance of counsel. Specifically, appellant argues that trial counsel rendered ineffective assistance: (1) by failing to request the trial court to instruct the jury on the lesser included offense of reckless homicide; and (2) by failing to move for a Crim.R. 29 judgment of acquittal at the close of the state's case.
 A STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS {¶ 17} In State v. Hanna (2002), 95 Ohio St.3d 285, 302-303,767 N.E.2d 678, the Ohio Supreme Court stated the well-established standard for reviewing claims of ineffective assistance of counsel:
 {¶ 18} "Reversal of convictions for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674."
 {¶ 19} When a court reviews an ineffective assistance of counsel claim, the court should remain mindful that the Sixth Amendment right to
 {¶ 20} counsel protects "the fundamental right to a fair trial."Strickland v. Washington (1984), 466 U.S. 668, 684, 104 S.Ct. 2052,80 L.Ed.2d 674. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id., 466 U.S. at 685. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair," id., 466 U.S. at 685, and "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.,466 U.S. at 686.
 {¶ 21} Thus, counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id.,466 U.S. at 687; see, also, State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); State v. Peeples (1994), 94 Ohio App.3d 34,44, 640 N.E.2d 208, 215 (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To prove that counsel's deficient performance prejudiced the defense, a defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see, also,Bradley, paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.").
 {¶ 22} Moreover, when a reviewing court considers an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643
(stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland,466 U.S. at 689. As the Strickland Court stated, a reviewing court:
 {¶ 23} "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., 466 U.S. at 689; see, also, State v. Hamelin (1988),37 Ohio St.3d 153, 524 N.E.2d 476, cert. den. (1988), 488 U.S. 975,109 S.Ct. 515, 102 L.Ed.2d 550 (stating that a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness).
 {¶ 24} With the foregoing principles in mind, we will now review appellant's specific arguments regarding his trial counsel's allegedly deficient performance.
 B LESSER INCLUDED OFFENSE INSTRUCTION {¶ 25} First, we disagree with appellant's assertion that trial counsel's failure to request a reckless homicide jury instruction constituted deficient performance.
 {¶ 26} Generally, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy, and, therefore, does not establish ineffective assistance of counsel. SeeState v. Griffie (1996), 74 Ohio St.3d 332, 333. Assuming, arguendo, that trial counsel's failure to request a reckless homicide instruction constituted deficient performance, we conclude that counsel's allegedly deficient performance in failing to so request the trial court did not prejudice appellant's case. Had trial counsel requested the trial court to instruct the jury regarding reckless homicide, the result of appellant's trial would not have been different.
 {¶ 27} To determine whether a lesser included offense instruction is required, a court first must examine whether the offense truly is a lesser included offense of the crime with which the defendant stands charged.
 {¶ 28} "[A] criminal offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Barnes (2002),94 Ohio St.3d 21, 25-26, 759 N.E.2d 1240 (citing State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus).
 {¶ 29} In the case sub judice, after we compare the elements of the crime with which appellant was charged, aggravated murder, to the offense appellant claims is a lesser included offense, reckless homicide, we agree that reckless homicide is a lesser included offense of aggravated murder. R.C. 2903.01(A), the aggravated murder statute, provides: "(A) No person shall purposely, and with prior calculation and design, cause the death of another * * *." R.C. 2903.041, the reckless homicide statute, provides: "(A) No person shall recklessly cause the death of another * * *."
 {¶ 30} The first element, whether the offense carries a lesser penalty than the other offense, is met. Reckless homicide is a third degree felony that carries a lesser penalty than aggravated murder. A defendant convicted of reckless homicide faces one to five years imprisonment. See R.C. 2929.14. A defendant convicted of aggravated murder faces life imprisonment or death. See R.C. 2929.02. The second element, whether the greater offense could be committed without the lesser offense also being committed, also is met. One cannot commit aggravated murder without also committing reckless homicide. See Statev. Wright (Mar. 26, 2002), Scioto App. No. 01CA2781. If one purposefully causes the death of another with prior calculation and design, then one necessarily also recklessly causes the death of another.
 {¶ 31} We also conclude that the third element, whether some element of the greater offense is not required to prove the commission of the lesser offense, also is met. To commit reckless homicide, one need not commit the offense with prior calculation and design.
 {¶ 32} Thus, because all three prongs of the lesser included offense test are satisfied, reckless homicide is a lesser included offense of aggravated murder. However, simply because an offense is a lesser included offense of the crime with which a defendant stands charged does not result in the conclusion that the trial court must give the lesser included offense instruction. See State v. Thomas (1988),40 Ohio St.3d 213, 216, 533 N.E.2d 286. Rather, a trial court must instruct a jury regarding a lesser included offense when the evidence presented at trial would support it. Id. In other words, a trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."Id. Moreover, in determining whether the evidence reasonably supports the lesser included offense instruction, "[t]he persuasiveness of the evidence regarding the lesser included offense is irrelevant." State v.Wilkins (1980), 64 Ohio St.2d 382, 388, 415 N.E.2d 303. Instead, the trial court must give the lesser included offense instruction, "[i]f under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." Id. An instruction is not warranted, however, every time "some evidence" is presented on a lesser included offense. SeeState v. Shane (1992), 63 Ohio St.3d 630, 632-33, 590 N.E.2d 272.
 {¶ 33} "To require an instruction * * * every time `some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Shane, 63 Ohio St.3d at 633; see, also, State v. Wright (Mar. 26, 2002), Scioto App. No. 01CA2781.
 {¶ 34} After our review of the evidence in the case sub judice, we do not believe that had trial counsel requested a reckless homicide instruction the trial court would have been required to give the instruction. More importantly, we do not believe that the jury reasonably could have found appellant not guilty of the aggravated murder charge, but guilty of reckless homicide.
 {¶ 35} The evidence amply demonstrates that appellant committed the offense of murder with prior calculation and design. Appellant admitted that he possessed foreknowledge that Forbes intended to kill Storts. Appellant acquiesced in Forbes's plan by helping Forbes lure Storts out on the evening of January 10 and by handing Forbes the gun that Forbes used to kill Storts, knowing that Forbes was going to use the gun to kill Storts. Appellant's own admissions reveal that he acted with prior calculation and design. The evidence does not reasonably support appellant's argument that he recklessly caused Storts's death. Nothing about appellant's conduct was reckless. Handing another person a gun with knowledge that the other person is going to use the gun to kill another is not reckless conduct. Rather, this conduct is purposeful.
 {¶ 36} Moreover, we note that the trial court gave the jury a lesser included offense instruction for the crime of murder. Had the jury determined that appellant did not act with prior calculation and design, it could have found appellant not guilty of aggravated murder, but guilty of murder. Thus, contrary to appellant's assertion, the jury was presented with "a logical alternative to aggravated murder."
 {¶ 37} Consequently, we disagree with appellant that trial counsel's allegedly deficient performance in failing to request reckless homicide offense instruction prejudiced appellant's case.
 C SUFFICIENCY OF THE EVIDENCE {¶ 38} Appellant further argues that trial counsel rendered ineffective assistance of counsel by failing to properly move for a Crim.R. 29(C) judgment of acquittal. As we will explain in our discussion of appellant's second assignment of error, infra, we believe that the record contains sufficient evidence to support appellant's conviction for aggravated murder. Thus, trial counsel's alleged deficient performance did not prejudice appellant's case. The outcome of the trial court proceedings would have been the same regardless of trial counsel's alleged deficient performance.
 {¶ 39} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 40} In his second assignment of error, appellant asserts that insufficient evidence exists to support his conviction and that his conviction is against the manifest weight of the evidence. With respect to his sufficiency of the evidence claim, appellant contends that the state failed to prove beyond a reasonable doubt that appellant acted with prior calculation and design. Regarding his claim that his conviction is against the manifest weight of the evidence, appellant argues that substantial, competent and credible evidence does not exist to support the conclusion that he aided or abetted Forbes in planning Forbes's murder. We disagree with appellant.
 A SUFFICIENCY OF THE EVIDENCE {¶ 41} After the jury returned its verdict, appellant filed a motion for a Crim.R. 29(C)[2] judgment of acquittal. A trial court may order a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).[3] A trial court shall not enter a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the state has established, beyond a reasonable doubt, each essential element of the offense. See, e.g., State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
 {¶ 42} When an appellate court reviews a trial court's decision to overrule a motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965; State v. Jenks (1991),61 Ohio St.3d 259 at 273, 574 N.E.2d 492. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (stating that "sufficiency is the test of adequacy"); Jenks, 61 Ohio St.3d at 273. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; Jenks,61 Ohio St.3d at 273. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). Reviewing courts will not overturn convictions on sufficiency of evidence claims unless reasonable minds could not reach the conclusion reached by the trier of fact. SeeState v. Tibbetts (2001), 92 Ohio St.3d 146 749 N.E.2d 226; State v.Treesh (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.
 {¶ 43} Employing the above standard, we believe that in the case sub judice the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offense of aggravated murder. R.C. 2903.01 sets forth the offense of aggravated murder: "(A) No person shall purposely, and with prior calculation and design, cause the death of another * * *." Appellant disputes whether sufficient evidence exists to demonstrate, beyond a reasonable doubt, that he acted with prior calculation and design.
 {¶ 44} As to "prior calculation and design," no "bright-line test" exists that "emphatically distinguishes between the presence or absence" of "prior calculation and design." State v. Coley (2001),93 Ohio St.3d 253, 263, 754 N.E.2d 1129; see, also, State v. Taylor
(1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82. "`[P]rior calculation and design' requires `a scheme designed to implement the calculated decision to kill.'" State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 196,616 N.E.2d 909 (quoting State v. Cotton, 56 Ohio St.2d at 11,381 N.E.2d at 193).
 {¶ 45} In the case at bar, we believe the record contains sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that appellant acted with prior calculation and design. During his taped interview, appellant admitted that he knew of Forbes's plan to kill Storts. Appellant admitted that he acquiesced in Forbes's plan. Appellant admitted that he and Forbes lured Storts out on the evening of January 10, 2001 with the intention of killing Storts. Appellant stated that the reason they called Storts's residence was to ensure that Storts would be with appellant and Forbes that evening so that Forbes could carry out his plan to murder Storts. Appellant admitted that he handed Forbes the hat that contained the gun hidden inside, and that he knew that Forbes intended to use the gun to kill Storts. Forbes and appellant engaged in a decision to kill that had been calculated. Forbes and appellant engaged in a scheme to carry out that calculated decision. Contrary to appellant's assertions, the evidence more than adequately demonstrates that he acted with prior calculation and design.
 {¶ 46} Consequently, we disagree with appellant that insufficient evidence exists to establish, beyond a reasonable doubt, that he acted with prior calculation and design.
 B MANIFEST WEIGHT OF THE EVIDENCE {¶ 47} Appellant next asserts that his conviction is against the manifest weight of the evidence.
 {¶ 48} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while however, bearing in mind that credibility generally is an issue for the trier of fact to resolve. See State v.Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387
(quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See Statev. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 49} After our review of the record in the case sub judice, we find substantial, competent and credible evidence upon which the trier of fact reasonably could conclude that the prosection established, beyond a reasonable doubt, the essential elements of the aggravated murder offense. The jury did not clearly lose its way and create a manifest miscarriage of justice.
 {¶ 50} As we noted, supra, the evidence amply reveals that appellant knew that Forbes intended to kill Storts. Appellant's admissions to the law enforcement officers belie his claims to the contrary. The evidence amply reveals that appellant aided Forbes in carrying out the plan by helping to lure Storts to accompany them that evening and by handing Forbes the gun, while knowing that Forbes intended to shoot Storts. Based upon the substantial, credible and competent evidence presented at trial, we believe that the judgment of conviction is supported by substantial competent, credible evidence.
 {¶ 51} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[2] Although the transcript of the trial court proceedings states that counsel filed the motion pursuant to Crim.R. 2(C), we note that trial counsel addressed the substance of the motion by pointing out that his motion was directed at the sufficiency of the evidence. Moreover, it appears that the transcript contains a typographical error.
[3] The standard that applies to Crim.R. 29(A) motions also applies to Crim.R. 29(C) motions. See State v. Huffman (1987), 38 Ohio App.3d 84, 85,526 N.E.2d 85.
We note that unlike a Crim.R. 29(A) motion, a Crim.R. 29(C) motion for judgment of acquittal permits a defendant to request the trial court to enter a judgment of acquittal after the jury has returned its verdict, even if the defendant had not, prior to the close of all the evidence, moved for a Crim.R. 29(A) judgment of acquittal. The rule states: "It shall not be a prerequisite to the making of such motion that a similar motion has been made prior to the submission of the case to the jury."